IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10cv547

| | |
|---|---|
| THOMAS J.P. MARSH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | |
| ) | MEMORANDUM OPINION |
| RICHARD P. BLACK, RICHARD L. ) | AND ORDER |
| JENSON, and UNION COUNTY, ) | |
| NORTH CAROLINA, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on a motion for summary judgment by defendants. Plaintiff filed a complaint in this court on November 1, 2010. On August 1, 2011, defendants filed a motion for summary judgment. Plaintiff has filed a response in opposition to the motion for summary judgment, defendants have filed a reply, and the matter is ripe for disposition. Furthermore, the court held a hearing on the motion for summary judgment on September 21, 2011.

**I.      Background**

At all relevant times, plaintiff owned a farm in Union County, North Carolina. According to the complaint, since January 2007 defendants have consistently required plaintiff to obtain a Special Use Permit to hold rodeos, while not requiring similarly situated persons or entities to also obtain a permit. (Compl. ¶ 3.) Defendant Union County has

1

obtained a permanent injunction barring plaintiff from holding certain gatherings on the farm. (*Id*.) Plaintiff contends, among other things, that his Fourteenth Amendment equal protection rights have been violated.

**II.    Facts**

The following facts are undisputed, unless otherwise noted by the court, and are taken in the light the most favorable to plaintiff as the non-movant. Plaintiff's family owned about 300 acres of farmland in the Town of Marshville in Union County, North Carolina. (*Id*. ¶ 7.) Plaintiff raised livestock and engaged in animal husbandry on the land. (*Id*.) Defendant Richard P. Black was, at all relevant times, employed by Union County as either Planning Administrator or interim County Manager. (*Id*. ¶ 7.) Defendant Richard L. Jenson was Union County Land Administrator at all relevant times. (*Id*. ¶ 9.) Black was Jenson's supervisor. (*Id*. ¶ 8.) Defendant Union County is a political subdivision of the State of North Carolina, operating and organized as a county government, pursuant to North Carolina General Statutes §§ 153A-10, 153A-11, and 153A-345.[1] (*Id*. ¶ 10.)

During the latter part of 2006, plaintiff decided that he wanted to host rodeo events on his land. (*Id*. ¶ 11.) Plaintiff named his rodeo Plaza de Toros Rio Grande. (*Id*. ¶ 12.) Rather than being based on a traditional American rodeo model, plaintiff's rodeo was based

---

[1] Plaintiff alleges, upon information and belief, that defendant Union County has purchased liability insurance sufficient under Section 153A-435 to waive its immunity against civil liability.

on a Spanish rodeo concept and was designed to appeal to a Hispanic audience.[2] (*Id*.)

Plaintiff contacted defendant Jenson to ask what plaintiff needed to do to comply with Union County ordinances so he could operate a rodeo on his farm. (*Id*. ¶ 13.) According to plaintiff, Jenson initially informed plaintiff that Union County did not have any authority over the proposed rodeo and sent plaintiff to meet with defendant Black, who also told plaintiff that Union County had no authority over the rodeo. (*Id*.) Defendants admit that plaintiff met with Jenson, but they otherwise deny that plaintiff met with Black. (*See* Answer ¶ 13.) Plaintiff alleges that, at a subsequent meeting with Jenson, Jenson told plaintiff that he should apply for a Special Use permit ("SUP") to "help protect the County." (*Id*. ¶ 14.) Defendants deny that Jenson made this statement. (Answer ¶ 14.) At a later meeting, Jenson asked plaintiff if he was aware of any opposition to his rodeo. (Compl. ¶ 15.) Plaintiff told Jenson that he was not aware of any opposition, but that any opposition would likely come from neighbors who did not want large groups of Hispanic people in the area on a regular basis. (*Id*.)

Plaintiff subsequently submitted all required applications for a permit. (*Id*. ¶ 18.) Plaintiff's request was considered at the March 5th, April 2nd, and May 7th, 2007, meetings of the Union County Board of Adjustment. (*Id*.) At the May 7, 2007, meeting, the Board voted 5-2 to approve plaintiff's application for a SUP, with the stipulation that plaintiff

---

[2] As the court discusses, *infra*, plaintiff alleges in the complaint that, while other area rodeos had operated in Union County for years, plaintiff's rodeo was the only rodeo in Union County that was specifically marketed to a Hispanic audience. Defendants dispute this allegation in that defendants contend that plaintiff has offered no admissible evidence of similarly situated persons or entities in Union County.

would be limited to hosting four rodeo events in 2007.³ (*Id*. ¶ 19; Ex. 4 to Defs.' Br. Supp. Mot. Summ. J.) By letter dated September 11, 2007, the Board informed plaintiff of its decision to grant the SUP. (*Id*. ¶ 20; Decision Letter of the Board of Adjustment, Ex. 5 to Defs.' Br. Supp. Mot. Summ. J.)

Plaintiff alleges that, during the application process for the SUP, plaintiff learned that a petition was being circulated opposing the proposed rodeo events on plaintiff's farm. (*Id*. ¶ 22.) Plaintiff alleges "upon information and belief" that the petition was being circulated because the petition signers did not want large groups of Hispanics gathering on plaintiff's farm on a regular basis. (*Id*.) Plaintiff further alleges "upon information and belief" that at least one of the petition signers was a member of a Union County board or commission. (*Id*. ¶ 23.) Plaintiff alleges that he asked defendants to provide him a copy of the petition on several occasions. (*Id*. ¶ 24.) Plaintiff alleges that defendants first claimed that they could not locate the petition, and then they denied that any petition ever existed. (*Id*.) Defendants Black and Jenson both testified in their depositions that they never saw any petitions opposing plaintiff's rodeo. (*See* Black Dep. 16:16-21; Jenson Dep. 14:12-15:9.)

Plaintiff hosted four rodeo events during the summer and fall of 2007. (*Id*. ¶ 26.) In the fall of 2007, defendants accused plaintiff of having more than four rodeo events during

---

³ Based on the terms of the Union County Land Use Ordinance and its Table of Uses, a SUP is required for special events on property in which live music, vendors, bike games, camping, bike shows, bike rodeos, and/or disc jockeys with amplified music is involved. (*See* Consent Permanent Injunction ¶ 3, Ex. 12 to Defs.' Br. Supp. Mot. Summ. J.) The Union County Board of Adjustment determined that the special events and/or rodeo type activities on plaintiff's property were non-farm activities and, therefore, required a SUP. (*Id*. ¶ 4.)

4

2007 and, thus, exceeding the number of rodeo events allowed under the SUP. (*Id*. ¶ 27.) On October 25, 2007, at a special session, the Board of Adjustment voted unanimously to revoke plaintiff's SUP. (*Id*. ¶ 27; Ex. 7 to Defs.' Br. Supp. Mot. Summ. J.) On November 30, 2007, plaintiff appealed the Board's decision to revoke his permit, arguing that a SUP was not required because plaintiff's rodeo-type activities fell within a zoning exemption for *bona fide* farming activities. (*See Marsh v. Union Cnty. Bd. of Adjustment*, No. COA09-1353 (N.C. Ct. App. July 6, 2010) (hereinafter "*Marsh*"), attached as Ex. 1 to Defs.' Br. Supp. Mot. Summ. J.) On April 16, 2008, the Union County Superior Court upheld the Board's decision. (*Marsh v. Union Cnty. Bd. of Adjustment*, 07CVS03458 (Union County Sup. Ct. Apr. 16, 2008), Ex. 9 to Defs.' Br. Supp. Mot. Summ. J.) Plaintiff did not appeal the April 16, 2008, decision of the Union County Superior Court.

Plaintiff alleges that in June 2008, defendants contacted plaintiff to negotiate a compromise on the issue of whether plaintiff would be allowed to operate his rodeo without being required to obtain a SUP. (Compl. ¶ 31.) By letter dated June 20, 2008, defendants informed plaintiff that they would not amend the ordinances, citing their inability to draft a text amendment that was "accommodating" to plaintiff and the nearby property owners. (*Id*.)

By letter dated September 9, 2008, defendant Jenson accused plaintiff of violating the Union County Land Use Ordinance by staging "Special Events/Rodeos on September 16, 2007, October 21, 2007, July 20, 2008, and September 7, 2008, either in violation of or without a valid Special Use Permit." (*Id*. ¶ 29; Ex. 10 to Defs.' Br. Supp. Mot. Summ. J.) The letter further stated that "[i]n order to correct this violation you must immediately cease

5

holding these Special Events (Rodeos)." (*Id*.) On December 11, 2008, the Union County Board of Adjustment upheld the issuance of the violation letter. (Ex. 11 to Defs.' Br. Supp. Mot. Summ. J.) On June 18, 2009, the Union County Superior Court affirmed the Union County Board of Adjustment's decision.

On November 5, 2009, the Union County Superior Court entered a temporary restraining order, which was extended by a Consent Preliminary Injunction on November 30, 2009, prohibiting plaintiff from holding special events requiring a SUP under the ordinances. (Consent Permanent Injunction ¶ 15, Ex. 12 to Defs.' Br. Supp. Mot. Summ. J.) The consent preliminary injunction was stayed pending resolution of plaintiff's appeal of the Union County Superior Court's June 18, 2009, Order affirming the Union County Board of Adjustment's decision to the North Carolina Court of Appeals. (*Id*.)

On July 6, 2010, the North Carolina Court of Appeals upheld the June 18, 2009, decision of the Union County Superior Court in *Marsh v. Union Cnty. Bd. of Adjustment*, No. COA09-1353, slip. op. at 1 (N.C. Ct. App. July 6, 2010). Specifically, the Court of Appeals determined that the North Carolina Superior Court had already ruled that Union County had the authority to regulate plaintiff's activity in its April 16, 2008, order, and plaintiff had not appealed that order. Therefore, plaintiff was barred under collateral estoppel from re-litigating the issue.

On November 22, 2010, the parties entered into a consent permanent injunction, which was filed on January 16, 2011, and which restrains plaintiff from holding rodeo and other events that require a SUP or that otherwise violate the county's ordinances. (*Id*.)

6

Case 3:10-cv-00547-MOC -DCK   Document 22   Filed 10/07/11   Page 6 of 15

Plaintiff filed this lawsuit on November 1, 2010. Plaintiff alleges in the complaint that defendants' decision to require plaintiff to obtain a SUP, while similarly situated persons in Union County were allowed to hold similar events without having to obtain a SUP, violates plaintiff's Fourteenth Amendment right to equal protection. In the complaint, plaintiff identifies two entities that he contends are similarly situated to him: Bar L Rodeo and the Carolina United Motorcycle Organization. (Compl. ¶¶ 16, 32.) Plaintiff alleges that Bar L Rodeo is close to the site of plaintiff's rodeo and has been allowed to operate for 15 years without being required to obtain a SUP. (*Id*. ¶ 16.) Plaintiff also alleges that the Carolina United Motorcycle Organization has held fundraisers in Union County for more than 20 years and was never required to obtain a SUP until 2009, when the group's leader James Parker contacted the county about holding an event on plaintiff's farm. (*Id*. ¶ 32.)

Plaintiff brings the following claims against defendants: (1) an action under 42 U.S.C. § 1983 for violation of plaintiff's equal protection rights under the Fourteenth Amendment of the U.S. Constitution; (2) "supervisory violations" under 42 U.S.C. § 1983 based on defendant Union County's and defendant Black's acquiescence or approval of defendant Jenson's statement to plaintiff that he needed to apply for a SUP in order to "help protect the County," thus, acquiescing in Jenson's violation of plaintiff's equal protection rights; (3) "conspiracy" under 42 U.S.C. § 1983 based on defendants' conspiracy to deprive plaintiff of his right to equal protection under the Fourteenth Amendment by requiring plaintiff to obtain a SUP that other rodeo operators were not required to obtain; (4) "concealment of public records" based on defendants' agreement to conceal a petition opposing plaintiff's

7

rodeo, with the intent to deny plaintiff's right to equal protection; (5) "destruction of public records" based on defendants' destruction of the petition opposing plaintiff's rodeo, with the intent to deny plaintiff's right to equal protection; (6) "intentional infliction of emotional distress and conspiracy"; and (7) "denial of equal protection."

### III. Applicable Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

FED. R. CIV. P. 56(a). The rule goes on to provide procedures for responding to a motion for summary judgment:

> c) Procedures.
>
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

8

> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues of fact for trial. Once the moving party has met that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting FED. R. CIV. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id*. A dispute about a material fact is "genuine" only if the evidence is such that

9

"a reasonable jury could return a verdict for the nonmoving party." *Id*. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. *Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a motion for summary judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. *United States ex rel. Jones v. Rundle*, 453 F.2d 147 (3rd Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir. 1979). In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. *Anderson*, 477 U.S. at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

**IV. Analysis**

**A. Defendants' Contention that Plaintiff's Claims Are Barred by *Res Judicata***

Defendants first contend that plaintiff's claims are barred by *res judicata* based on the the prior state court decisions upholding the county's revocation of plaintiff's SUP. The court will decline to address the parties' respective *res judicata* arguments because the court finds that defendants are entitled to summary judgment as to all of plaintiff's claims on the merits. The court will address each claim in turn.

**B. Plaintiff's Section 1983 Action Alleging an Equal Protection Claim**

10

### Based on a "Class of One"

In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam), the United States Supreme Court upheld the viability of a "class of one" theory for the purposes of an equal protection claim arising under the Fourteenth Amendment.[4] The "class of one" theory requires a plaintiff to demonstrate that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. at 564; *accord Veney v. Wyche*, 293 F.3d 726, 730-31 (4th Cir. 2002). Here, in support of his equal protection claim, plaintiff contends that, since January 2007, defendants have consistently required plaintiff to obtain a SUP to hold rodeos, while not placing the same requirement on similarly situated rodeo operators and other entities that are also subject to the Union County land use ordinances. Plaintiff identifies two entities in his complaint that he contends are similarly situated to plaintiff–Bar L Rodeo and the Carolina United Motorcycle Organization. Plaintiff has failed, however, to present any admissible evidence on summary judgment, *i.e.*, by affidavit, deposition testimony, etc., showing that any similarly situated persons were treated differently from plaintiff. For instance, plaintiff has presented no affidavits or deposition testimony by other rodeo operators in Union County attesting to the fact that they were similarly situated to plaintiff, but that they were not required to obtain a SUP. Nor has plaintiff presented any evidence showing that Union

---

[4] In *Olech*, the plaintiff alleged that the defendant demanded a 33-foot easement as a condition of connecting the plaintiff's property to the municipal water supply where the defendant required only a 15-foot easement from other, similarly situated property owners, and that the demand was irrational and wholly arbitrary. *Olech*, 528 U.S. at 563.

11

County knew about any other events that required a SUP and that the county chose not to require a SUP for those events.

A party opposing a properly supported motion for summary judgment may not rely on unsworn allegations. *See Anderson*, 477 U.S. at 256. Where the nonmoving party presents to the court only unsworn allegations and no admissible evidence in opposition to the moving party's motion for summary judgment, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). In such a situation, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [the] case with respect to which [the non-moving party] has the burden of proof." *Id*.

Here, plaintiff bears the burden of demonstrating that there were similarly situated persons or entities in Union County that were required under the ordinances to obtain a SUP before hosting certain events, but that the county did not require those persons or entity to obtain a SUP. In opposition to defendants' motion for summary judgment, plaintiff has essentially rested his case on the allegations of the complaint and his own discovery responses. Such unsworn allegations do not constitute evidence sufficient to defeat a motion for summary judgment. *See* FED. R. CIV. P. 56(e); *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004). Because plaintiff has simply failed to present any admissible in support of

12

his equal protection claim, defendants are entitled to summary judgment as to this claim.[5]

Because the court finds that defendants' motion for summary judgment will be granted as to plaintiff's equal protection claim, plaintiff's claims for "conspiracy" under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986 must likewise fail because plaintiff has failed to show that defendants conspired to do any unlawful act.[6]

### C. Plaintiff's Claim for Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under North Carolina law, a plaintiff must allege that the defendant "(1) engaged in extreme and outrageous conduct, (2) which was intended to cause and did cause (3) severe emotional distress." *S. Furniture Hardware, Inc. v. BB&T*, 526 S.E.2d 197, 201 (N.C. Ct. App. 2000) (quoting *Bryant v. Thalhimer Bros., Inc.*, 437 S.E.2d 519, 522 (N.C. Ct. App. 1993)). Conduct is extreme and outrageous when it is "so extreme in degree, as to go beyond all possible bounds

---

[5] Because the court finds that plaintiff has failed to come forward with admissible evidence showing that he was treated differently from similarly situated persons, the court does not address defendants' additional argument that defendants had several rational reasons for requiring plaintiff to obtain a SUP.

[6] In any event, Section 1985(3) provides a cause of action for a conspiracy to commit a civil rights violation against an individual. Plaintiff does not fall within a class protected under Section 1985, which the Fourth Circuit has held may include only a class based on race or religion. *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985). Furthermore, the conspiracy alleged is among Jenson, Black, and Union County. The Fourth Circuit has recognized the doctrine of intracorporate immunity, which recognizes that a corporation cannot conspire against itself. *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985). Alleging that a corporation is conspiring with its agents, officers, or employees is the same as accusing a corporation of conspiring with itself. *Id.* Finally, because plaintiff cannot withstand summary judgment as to his constitutional equal protection claim, it necessarily follows that his claim of "supervisory liability" also fails.

of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."
*Smith-Price v. Charter Behavioral Health Sys.*, 595 S.E.2d 778, 782 (N.C. Ct. App. 2004) (citations omitted).  Whether a defendant's alleged conduct is extreme and outrageous is a question of law for the court.  *Stamper v. Charlotte-Mecklenburg Bd. of Educ.*, 544 S.E.2d 818, 820 (N.C. Ct. App. 2001).

Here, even if plaintiff had presented admissible evidence that defendants treated plaintiff differently from similarly situated persons, defendants' alleged conduct simply does not rise, as a matter of law, to the level of extreme and outrageous conduct for the purpose of a claim for intentional infliction of emotional distress.  The court will therefore grant summary judgment to defendants as to plaintiff's claim for intentional infliction of emotional distress.

**D.     Plaintiff's Claims for "Concealment of Public Records" and "Destruction of Public Records"**

Next, plaintiff alleges in his complaint that during the pendency of his application for a SUP, plaintiff learned that a petition opposing the rodeo was being circulated.  Plaintiff alleges "upon information and belief" that the petition was being circulated because some people in the county did not want large groups of Hispanics gathering on plaintiff's farm on a regular basis.  Plaintiff alleges that defendants Jenson and Black either refused to provide a copy of the petition to plaintiff or that they destroyed the petition.

Plaintiff's claims for "concealment of public records" and "destruction of public records" is based on his allegation that the petitionfits within the definition of a "public

record" under N.C. GEN. STAT. § 132-1, which is the Public Records Chapter of the North Carolina General Statues. As defendants note, regardless of whether the alleged petition fits within the definition of a "public record," there is no legally cognizable claim for "concealment of public records" or "destruction of public records." The court will therefore grant summary judgment to defendants as to these two purported claims.

## V. Conclusion

For the reasons stated herein, the court will **GRANT** defendants' motion for summary judgment [docket #16] as to all of plaintiff's claims and dismiss this action with prejudice. The Clerk of Court is order to prepare a judgment in accordance with this Order.

**IT IS SO ORDERED**.

Signed: October 6, 2011

Max O. Cogburn Jr.
United States District Judge